UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 03-11130 |
| | : | CHAPTER 7 |
| DONALD SHELBY MILLER AND JUDY | : | |
| ARLENE MILLER, DEBTORS | : | |
| | : | |
| DONALD SHELBY MILLER AND JUDY | : | ADVERSARY NO. 06-1082 |
| ARLENE MILLER, Plaintiffs | : | |
| vs. | : | |
| U.S. DEPARTMENT OF EDUCATION, | : | |
| DIRECT LOANS, Defendant | : | |

APPEARANCES:

DONALD SHELBY MILLER AND JUDY ARLENE MILLER, DEBTORS, PRO SE
PAUL E. SKIRTICH, ESQ., PITTSBURGH, PA, ATTORNEY FOR DEFENDANT

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

AUGUST   14   , 2006

OPINION

Introduction

On May 9, 2003, Donald Shelby Miller and Judy Arlene Miller ("Debtors") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code. On September 18, 2003, an Order of discharge was entered and the bankruptcy case was closed. On March 9, 2006, Debtors filed a Motion to Reopen the case to prosecute a Complaint to determine if the student loan obligations of Judy Arlene Miller ("Miller") are dischargeable due to undue hardship.[1] By Order dated March 16, 2006, the Motion to Reopen was granted and on March 20, 2006, a Summons was

---

[1] The within Adversary Complaint was filed with both Donald Shelby Miller and Judy Arlene Miller as Plaintiffs. The student loans at issue are the loans of Judy Arlene Miller only and she will be referred to as "Miller" in the remaining portion of this Opinion.

issued on the Debtors' Adversary Complaint. Presently before the Court is the Motion for Summary Judgment and Brief filed by the U.S. Department of Education, Direct Loans ("Direct Loans"). Debtors were directed to and did file a Response to the Motion for Summary Judgment. There are no material facts in dispute and the matter is ripe for decision. The Motion for Summary Judgment filed by Direct Loans will be granted.

Factual Background

A. Loans

Prior to the bankruptcy filing on May 9, 2003, Miller obtained numerous educational loans. Miller listed certain educational loans on Schedule F of the Petition as an unsecured nonpriority claim in the amount of $70,000. No adversary proceeding to determine the dischargeability of the educational loans was initiated by the Debtors prior to the entry of the discharge order and the closing of the bankruptcy case on September 18, 2003. The Debtors state, and we accept as true for purposes of this Opinion, that they were unaware of the need to file an adversary proceeding to determine the dischargeability of the educational loans and believed that once the discharge order was entered, the obligation to repay the educational loans had also been discharged.

In October, 2004, certain educational loan creditors began aggressive collection efforts. By February 13, 2005, certain education loan creditors claimed a balance due of $107,314 and were threatening to garnish Miller's wages. The collection agency prosecuting collection of the educational loans offered Miller a loan consolidation program and urged its acceptance. As Miller states, "[h]e sent documents to my home with paperwork that he had highlighted to were

(sic) I should sign and he called my home two to three times a day to make sure that I signed the paperwork because FedEx was picking it up." Miller elected to complete the paperwork on February 13, 2005, made application, and signed a promissory note for a Federal Direct Consolidation Loan under the William D. Ford Direct Loan Program to consolidate and pay off certain nondischarged educational loans (the "Consolidation Loan"). Miller selected the Income Contingent Repayment Plan ("ICR") under the Ford program.

> The application that Miller signed for the ICR provides:
>
> When you begin repaying your loan under ICR, your initial payment amount will be the full amount of interest that accumulates on your loan each month. You are responsible for paying this initial amount until we have the information needed to calculate your actual ICR payment and notify you of that amount. If you cannot afford the initial interest payment, you may request a forbearance until you are notified of your actual ICR payment.

In April, 2005, Miller received the first billing statement from Direct Loans for the ICR plan which required an initial payment of $737.79 by April 28, 2005. In accordance with the provisions of the application, Miller sought and was granted a forbearance for the period April 28, 2005 through June 28, 2005. After review of the Debtors' tax returns and acceptance into the ICR plan, Miller's monthly payments were calculated at $332.83. Miller then sought and was granted an Economic Hardship Deferment suspending the requirement for payment to Direct Loans for the period April 28, 2005 to May 6, 2006. Prior to the expiration of the deferment period, this Adversary Proceeding was initiated.

### B. Income/Expenses

In Schedule I, Current Income of Individual Debtors, filed with the bankruptcy Petition, Debtors indicate that they have three grandchildren as dependents. Schedule I states that Donald

Shelby Miller is disabled and has monthly income from social security of $1005 and Veteran's benefits of $695 for a total of $1700. Miller states that she is employed as a support manager at Wal-Mart with gross earnings of $1925 and net after deductions of $1296. Deductions include payroll taxes and social security $287; insurance $245; and 401K $98. Miller also indicates that she receives $396 per month for support payments for the grandchildren and that her total net monthly income is $1692. The Debtors' total combined monthly net income is shown as $3392.

On Schedule J, Current Expenditures of Individual Debtors, filed with the bankruptcy Petition, Debtors show total monthly expenses of $3214. Included in the monthly expenses are $180 for recreation, clubs and entertainment, newspapers, magazines, etc.; $825 for automobile installment payments; and $100 for lessons for kids – track, karate and football.

Along with Debtors' Response to the Motion for Summary Judgment, the following statement was filed:

INCOME:

Judy's Employer: Wooden Angel
    Prime Outlets at Grove City
    Suite 317
    Grove City, PA 16127

    Pay Rate: $10.00 an hour, work 37 to 40 hours a week

Social Security Disability: Donald's pay $1012 per month

Veterans Administration: Donald's pay $757 per month

Department of Public Welfare: Case NO. 43-0070164, Money received for the three grandchildren who we have custody of, $300 per month

I have no medical insurance; Donald is covered through the VA and Medicare that we have to pay for as well as what these two agencies don't cover. Kids are covered through the state.

EXPENSES:

House: $455
Cars: $700
Insurance (house and car): $180
Electric: $170
Gas: $148
Property Taxes: $500 per year
Medical: varies month to month
Food: $150 to $200 weekly
Gas to get back and forth to work: $20 weekly
Clothing: whatever we have left

Summary Judgment Standard

Fed.R.Civ.P. 56(c) made applicable to these proceedings pursuant to Fed.R.Bankr.P. 7056, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F3d 471, 482 n.1 (3d Cir. 2001) citing Celotex Corp. v. Catrett, 477 US 317, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

Discussion

A. Is Miller's Education Loan Debt, Consolidated Postpetition, Dischargeable?

Miller obtained a Chapter 7 discharge on September 18, 2003. Congress has designated some debts as nondischargeable in bankruptcy. Congress created these exceptions to the general

5

rule of dischargeability on the basis that "the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." Grogan v. Garner, 498 US 279, 287, 111 S.Ct. 654, 659 (1991). Congress included educational loans in the group of presumptively nondischargeable debts in §523(a)(8)[2] which provides:

> (a) A discharge under section 727. . .does not discharge an individual debtor from any debt–
> . . .
> (8) for an educational. . .loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. . .unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. §523(a)(8).

"Congress has created a presumption that student loan debts are not dischargeable. It has placed the burden of challenging the presumption on the debtor." Buford v. Higher Education Assistance Foundation, 85 BR 579, 582 (D KS 1988).

Miller did not commence an adversary proceeding to determine whether her educational loans were dischargeable prior to the issuance of discharge and closing of the case on September 18, 2003 and accordingly, Miller's original loans were not discharged in the bankruptcy case.

In February, 2005, Miller obtained the Consolidation Loan. The Consolidation Loan creates a new, postpetition and postdischarge debt. In re Clarke, 266 BR 301 (Bankr. ED PA 2001); In re Buwana, 338 BR 441 (Bankr. D CO 2004). See also In re Rudnicki, 228 BR 179, 181 (6th Cir. BAP 1999) ("when [D]ebtor consolidated his student loans, he received a new loan . . .the proceeds of which paid in full his original education loans. . . .The only student loan debt

---

[2] All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.

6

owed by the [Debtor]. . .was the consolidation loan.")

In Clarke, the debtor, as in this case, after receiving a discharge and without seeking a determination of the dischargeability of prepetition student loans, obtained a consolidation loan, and subsequently filed an Adversary Complaint seeking a determination of the dischargeability of her student loan debt. The Court states in Clarke:

> It is undisputed that after the Debtor received her discharge, and without seeking a determination of the dischargeability of the Original Loans, the Debtor sought and obtained the Consolidation Loan. The consolidation of educational loans is governed by the Higher Education Act (the "HEA"), which states in relevant part: "Loans made under this section which are insured by the Secretary shall be considered to be new loans made to students for the purpose of §424(a) [20 U.S.C. § 1074(a) ] of this title." 20 U.S.C. § 1078- 3(e) (emphasis added). Further, it requires that lenders under the Act enter into agreements with the Secretary of Education or a guarantee agency providing, among other things, "that the proceeds of each consolidation loan will be paid by the lender to the holder or holders of the loans so selected to discharge the liability on such loans." 20 U.S.C. § 1078- 3(b)(1)(D) (emphasis added). The plain language of these sections thus makes it clear that federal consolidation loans are new agreements which discharge the liabilities of the old loans and create their own obligations. See also Hiatt v. Indiana State Student Assistance Comm'n, 36 F.3d 21, 24 (7th Cir. 1994) ("[W]hen a borrower undertakes a consolidation loan, the original loan is repaid in full and the debt is discharged"); Martin v. Great Lakes Higher Educ. Corp. (In re Martin), 137 B.R. 770, 772 (Bankr.W.D.Mo.1992) ("The statutory language is clear that a consolidated loan is considered a new loan for educational purposes under the federally insured student loan program. . . .and, as expressly provided by 20 U.S.C. § 1078- 3(b)(1)(D), the old notes were discharged").

In re Clarke, 266 BR at 307-08.

Section 727 of the Bankruptcy Code provides that a discharge under §727(b) "discharges the debtor from all debts that arose before the date of the order for relief under this chapter" except as provided in §523. 11 U.S.C. §727(b). A debt is subject to discharge only if it is a prepetition obligation. In re Dean, 317 BR 482, 485 (Bankr. WD PA 2004).

The only loan now in existence is the Consolidation Loan, a postpetition debt which is

nondischargeable under §727(b). Direct Loan's position is correct, and summary judgment must be granted in its favor.

### B. Undue Hardship

While we have concluded that Direct Loans is entitled to summary judgment for the reason that the Consolidation Loan is a postpetition loan and is not discharged and therefore, we need not reach the factors required under §523(a)(8) to show "undue hardship," we think it appropriate to make a short comment for the benefit of the Debtors who are acting pro se as it appears that the Debtors could not meet the stringent requirements for "undue hardship" even if they had timely filed a Complaint seeking discharge of the student obligations prior to receiving a bankruptcy discharge and obtaining the new Consolidation Loan. The Court does not doubt that repayment of the student loan debt will result in a hardship to the Debtors. However, the Court has no authority to grant a discharge under §523(a)(8) based on "hardship." In the Bankruptcy Code, "undue" modifies "hardship."

> The standard for determining whether having to repay an education loan would result in undue hardship for purposes of §523(a)(8) is settled law in this circuit. In Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish), 72 F.3d 298 (3d Cir.), cert. denied, 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996), the Third Circuit adopted the three-part test articulated by the Second Circuit in Brunner v. New York State Higher Education Services Corp., 831 F.2d 395 (2d Cir. 1987). The Third Circuit concluded that the Brunner test was the "most logical and workable of the established tests for determining "undue hardship". Faish, 72 F.3d at 306. "Undue hardship" for purposes of §523(a)(8) requires proof that: (1) based on current income and expenses, debtor cannot maintain a minimal standard of living for herself and her dependents if she has to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the loan repayment period; and (3) debtor has made a good faith effort to repay the loan. Faish, 72 F.3d at 305.

In re Shilling, 333 BR 716, 721 (Bankr. WD PA 2005).

When Debtors filed their bankruptcy Petition in 2003, they had combined monthly net income of $3392. Miller was employed as a support manager at Wal-Mart with a net take-home pay of $1296.12 and received support payments for the care of her grandchildren in the amount of $390 for a total monthly income of $1692. The husband-Debtor, Donald, was disabled and received social security and veterans benefits in the total amount of $1700. Schedule J reveals total expense of $3214 which leaves an excess of $178 per month. In addition, the expenses include $180 for recreation, $825 for automobile installment payments, and $100 for "Lessons for kids - track, karate, football."

With the Response to the Motion for Summary Judgment, Debtors provide updated income and expense figures. Miller has different employment, earning a gross of $1667 per month (38.5 hours x $10.00 x 4.33 weeks per month) or approximately $258 less than she earned at the time of the bankruptcy filing. Miller does not provide her net income, but for our purposes, we will assume she nets $200 less per month or $1096. Donald continues to receive social security and veterans benefits in the increased amount of $1769 and the Debtors continue to receive support payments for their grandchildren in a reduced amount of $300 per month for a total net income of approximately $3165. Debtors have provided updated expense figures which, although vague, we calculate as $2556 per month, plus medical which varies, and clothing. Debtors continue to expend $700 per month for automobile payments.

The initial payment requirement for the Consolidation Loan under the ICR Plan is $332.83 per month. Based on the income and expense figures presented by the Debtors, and it appearing that certain reductions in expenses could be made without impacting the Debtors'

ability to maintain a minimal standard of living, which would enable repayment of the Consolidation Loan, the Court would be unable to find that the Debtors are entitled to a discharge of the student loan obligation under §523(a)(8).

    An appropriate Order will be entered.

```
                          /s/
              Warren W. Bentz
              United States Bankruptcy Judge
```

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 03-11130 |
| | : | CHAPTER 7 |
| DONALD SHELBY MILLER AND JUDY | : | |
| ARLENE MILLER, DEBTORS | : | |
| | : | |
| DONALD SHELBY MILLER AND JUDY | : | ADVERSARY NO. 06-1082 |
| ARLENE MILLER, Plaintiffs | : | |
| vs. | : | |
| U.S. DEPARTMENT OF EDUCATION, | : | |
| DIRECT LOANS, Defendant | : | |

## ORDER

This __14__ day of August, 2006, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the Motion for Summary Judgment filed by the U.S. Department of Education, Direct Loans, is GRANTED and the Complaint to Determine If Student Loan is Dischargeable Due to Undue Hardship on Debtors filed by Donald Shelby Miller and Judy Arlene Miller is DISMISSED.

                              /s/
                    Warren W. Bentz
                 United States Bankruptcy Judge

c: Debtors
Paul E. Skirtich, Esq.